22 C. C. P. A. (Patents)

**PFLUEGER v. JORDAN.**

**Patent Appeal No. 3428.**

Court of Customs and Patent Appeals.
April 8, 1935.

Albert L. Ely, of Akron, Ohio, and Charles M. Thomas, of Washington, D. C., for appellant.

Frank M. Slough, of Cleveland, Ohio, and George J. Oltsch and Eugene C. Knoblock, both of South Bend, Ind., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal in an interference proceeding from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the Examiner of Interferences, awarding priority of invention as to all of the counts in issue to the appellee, Jordan.

The issue of the interference consists of 10 counts, of which counts 2, 6, and 8 are illustrative and read as follows:

"2. A lure comprising a relatively thin elongated plate, a hook carried by said plate and having its shank extending longitudinally thereof, a weight carried by the forward end of the plate, and means securing said weight to said plate and in addition fixedly securing said hook shank to said plate."

"6. A lure comprising a relatively thin elongated plate, a weight carried by said plate at and below the level of the forward end of said plate to facilitate lateral reciprocatory movement of the plate as it sinks in the water and to prevent overturning of the plate, a hook carried by said plate with its barb disposed adjacent the rear end thereof, means secured to the rear end of the lure for movement independently thereof to retard sinking of the rear end of said lure, and means at the forward end of said lure for attachment of a fish line thereto."

"8. A lure comprising a relatively thin elongated plate, a weight carried by said plate at the forward end thereof, a hook having its shank extending longitudinally of said plate and its barb disposed adjacent the rear end thereof, means fixedly securing said hook shank to said plate, means secured to the rear end of said lure and

movable independently thereof to retard sinking of the rear end of said lure, and line attaching means carried by the forward end of said lure."

As may be gathered from the counts above quoted, the invention involved is a fish lure or artificial bait; the novelty resides in the provision of a weight carried by the forward end of the plate. Certain counts specify that the weight is placed at the under side of the plate. The function of the weight is to improve the oscillating movement of the lure while it is drawn through the water or allowed to sink, and also to prevent overturning. Counts 6 and 8 are further limited to "means secured to the rear end of the lure for movement independently thereof to retard sinking of the rear end of said lure," as stated in claim 6. This limitation refers to a spangle of the usual form.

The interference arises between an application of appellant Pflueger, Serial No. 362,733, filed May 13, 1929, for combination spoon and lure with weed guard, and a patent issued to appellee, Jordan, No. 1,833,581, granted November 24, 1931, for fishing lures, upon an application filed June 24, 1931, serial No. 546,581. Appellee is therefore the junior party and the burden rested upon him to prove priority of invention in himself by a preponderance of the evidence; since Jordan's patent was inadvertently issued while the application of Pflueger was copending in the Patent Office, no advantage accrued to Jordan by virtue of the issuance of his patent.

The claims of the Jordan patent were incorporated into the application of appellant by amendment; an interference was declared between appellant's application and said Jordan patent on March 2, 1932, said interference having been requested by appellant.

The preliminary statement of appellant alleged conception of the involved invention on or about October 15, 1925, disclosure to others on or about the same date, the writing of a description of said invention and the making of the first drawings also on or about the said date, and reduction to practice on or about October 21, 1925.

The preliminary statement of appellee, Jordan, alleged conception of the involved invention on or about September 1, 1924; that no written description or drawings were made of the invention; that it was first disclosed to others on or about the said date of September 1, 1924, and was reduced to practice by the making of a full-sized specimen and fully testing the same on or about said September 1, 1924; that he disclosed another embodiment of the invention to others on or about March 1, 1928, and reduced the same to practice by the making and successful testing of a full-sized working specimen of the same; that he further disclosed another embodiment of his invention to others on or about July 2, 1928, and again reduced the same to practice about June 1, 1929, by making and successfully testing a full-sized specimen of the same.

The board stated in its decision that it may be assumed that appellant's alleged dates of conception and reduction to practice are established by the record, and that, upon this assumption, it was necessary for appellee to establish a conception and reduction to practice prior to October, 1925, and further stated that, since there was no corroboration of appellee's evidence respecting his activities in 1925 relating to the invention, consideration should be limited to appellee's activities in 1924.

It appears from the record that in 1924 appellee was a practicing surgeon of Birmingham, Ala.; that he was an enthusiastic fisherman and made many of the fishing lures used by him; that in the early part of 1924 he invented a mechanical lure which appears to have been quite a radical departure from the prior art in respects not involving the invention here in issue, and on April 15, 1924, filed in the United States Patent Office two applications for patents upon the same, which applications resulted in the issue of Patent No. 1,606,078 on November 9, 1926, and No. 1,657,966 on January 31, 1928. Neither of these patents embraced the invention here involved. According to the testimony of appellee, it was while experimenting with various materials employed to construct the devices embraced in said patents that he conceived the invention here involved; that in the spring, summer, and fall of 1924 he made several lures which included a weight added to and made a part of the forward end of the lure covered by the inventions, which resulted in the issue of the above-described patents. He introduced in evidence three lures marked Exhibit A and three lures marked Exhibit B, which appellee testified that he personally made and tested successfully in 1924. The Examiner held that the two

largest Exhibit A lures and the metallic Exhibit B lure support all of the counts involved in this appeal. It appears that the Exhibit A lures were made of brass, and that the metallic Exhibit B lure was made of tin.

Appellee testified positively that these lures were made in 1924; that they were first tested in a bathtub to see whether they gave the desired movement, and that subsequently in 1924 they were used on fishing trips, one of which was to Pine Log Creek, Fla.; that on this trip he was accompanied by his son Augustus, then 19 years of age, and by his colored chauffeur, one Albert Sagere, each of whom, appellee testified, witnessed the test of the lures embodying the invention here involved. The testimony of appellee was corroborated by his said son and chauffeur. Appellant challenges the sufficiency of said corroboration and points to testimony of appellee's son Augustus, wherein the latter testified that he was "unfamiliar with the details of construction of these lures," and the testimony of said Sagere that appellee did not start to make lures of brass until 1928. Appellant also relies upon the fact that in appellee's applications upon which patents were issued as aforesaid no mention was made of the issue here involved, although amendments to said applications were made after the time that appellee claimed to have made the invention in issue. Appellant also points out that appellee did not file his present application for patent until about 7 years after he claimed to have made the invention and reduced it to practice, and that the first written evidence in the record of appellee having made the invention here involved is a letter of appellee to the South Bend Bait Company, a licensee under his said patents, including the said patent here involved, which letter is dated February 14, 1929, although voluminous correspondence had passed between appellee and said South Bend Bait Company prior to that time. From all the foregoing, appellant contends that whatever appellee did in 1924 with respect to the invention embraced within the counts before us should be regarded as an abandoned experiment, and, granting that appellee conceived the invention in 1924, that he was not diligent in reducing it to practice at the time, and immediately before, appellant entered the field.

As hereinbefore noted, the South Bend Bait Company is a licensee under all of appellee's patents hereinbefore referred to. Appellant's application has been assigned to the Enterprise Manufacturing Company, of which appellant is superintendent and vice president. Both the South Bend Bait Company and the Enterprise Manufacturing Company are large manufacturers of fishing tackle.

It appears from the record that the testimony taken in this interference proceeding was also, by stipulation between the parties hereto, taken to be used in a certain action pending in the United States District Court for the Northern District of Indiana, South Bend Bait Co. v. Berman, 3 F. Supp. 174, wherein said South Bend Bait Company was plaintiff and one Abraham Berman was defendant, which action was for infringement of appellee's patent here involved, and that said action was defended by appellant's assignee, the Enterprise Manufacturing Company. Upon the oral argument before us, it was agreed by counsel for the respective parties that the decision in said action in the United States District Court, in so far as the question of priority of invention between the parties hereto is concerned, was based upon the same testimony as is here before us.

It is further conceded that said decision found as a fact that appellee here, Jordan, conceived the invention and reduced it to practice in 1924, prior to the conception of the invention of appellant. Upon appeal the Circuit Court of Appeals (Seventh circuit) affirmed this finding of fact. Berman v. South Bend Bait Co., 71 F.(2d) 575.

In view of the foregoing, the rule is especially applicable that concurring decisions by the Patent Office tribunals upon a question of fact will not be disturbed by us unless manifestly wrong.

It is true that appellee's conception and reduction to practice of the invention in 1924 rests wholly upon oral testimony, and it is also true that such testimony, given many years after the event, should be carefully scrutinized. Galamb v. Gilmer, 68 F.(2d) 967, 21 C. C. P. A. (Patents) 918. This we have done. We find nothing in the testimony of appellee himself to lead us to believe that his recollection was faulty or that he was lacking in candor and frankness. The difficulty, if any, with regard to the establishment of conception and reduction to practice of the invention by appellee lies in the corroborating testimony of

appellee's son, Augustus, and the testimony of his chauffeur, Sagere. As hereinbefore noted, Augustus testified that he was "unfamiliar with the details of construction of these lures." However, he did testify positively to the use in 1924 of lures embodying the invention here involved. The witness Sagere was of the opinion that appellee did not use lures having brass plates until 1928. If this was a fact, the lures embraced in Exhibit A could not have been made in 1924, as testified by appellee. However, Sagere testified positively that lures with tin plates embodying the invention here involved were used by appellee in 1924, and one of the lures of Exhibit B, the metallic one, embraces the invention here in issue.

Another circumstance which appellant stresses is the lack of any written evidence respecting appellee's invention until February 14, 1929, although much correspondence had theretofore passed between appellee and his licensee, the South Bend Bait Company. This would be an important circumstance were it not for the fact that appellee testified that he left with one Pagin, vice president of the South Bend Bait Company, in July, 1928, a lure received in evidence and marked Exhibit G, which embodies the invention here in issue. Said Pagin corroborated this testimony very positively. In view of this fact, the failure to refer to the invention here involved in the correspondence prior to February 14, 1929, would not seem to be of great importance.

Appellant also stresses the fact that, although appellee claims to have reduced the invention to practice in 1924, he did not file an application for patent therefor until November 24, 1931, and contends that this long delay is an indication that appellee's activities in 1924 should be regarded as an abandoned experiment. Upon this point we are inclined to agree with the Board of Appeals, that neither appellee nor the South Bend Bait Company appreciated that the addition of a weight to the lure disclosed in appellee's previous patents constituted a patentable feature. Had that been earlier appreciated, we cannot understand why the South Bend Bait Company, as a licensee under appellee's earlier patents, should have marketed lures embracing the invention here involved for nearly two years prior to the filing by appellee of the application which resulted in the issue of the patent involved in this interference.

We do not understand there is any contention that appellee suppressed or concealed his invention, creating an estoppel in favor of appellant, and there is no evidence to warrant such a finding.

The testimony shows that appellee's licensee, the South Bend Bait Company, placed lures upon the market embracing the invention here involved prior to the placing upon the market by appellant of lures embodying the invention.

We do not deem it necessary further to discuss the evidence. While, as hereinbefore indicated, there are some circumstances which might lead to the conclusion that appellee had not sufficiently established conception and reduction to practice of the invention by him in 1924, we are of the opinion that upon the whole record we cannot say that the Examiner of Interferences and the Board of Appeals, in coming to the conclusion that such conception and reduction to practice had been established by a preponderance of the evidence, were manifestly wrong.

Accordingly, the decision of the Board of Appeals is affirmed.

Affirmed.